Good morning, everyone. Good morning, everyone. Good morning. All right, we will begin on this November 1st. And the first case of the day is Appeal Number 21-3303, T.S. v. County of Cook. And good morning, Mr. Henready. Good morning. Good morning, Your Honor. May it please the Court. There are two discrete issues before you here today. First is whether the District Court erred in finding that the Illinois officer suit exception precludes Defendant Leonard Dixon's sovereign immunity defense on the sole remaining state law tort claim. The second issue is whether the state breach of fiduciary duty claim can be maintained against Dixon, the superintendent of the Cook County Juvenile Temporary Detention Center. Plaintiffs' claims stem from Dixon's decision to allow filming of the television series Empire within the walls of the detention center. Plaintiffs initially claimed that due to the filming, they were confined to their cells for days and that they were not provided with medical care. Discovery proved these claims false, and the District Court dismissed the majority of defendants' claims, including properly granting Dixon qualified immunity for the Section 1983 claims. As this Court well knows, hundreds of conditions of confinement claims are brought under 1983 each year against correctional centers in Illinois. This is the standard and appropriate method for bringing such claims, and all of the claims have been dismissed from this case. All that remains is a breach of fiduciary duty claim, a state theory of liability normally alleged when parties have a corporate or financial relationship. Turning first to whether the officer suit exception applies to bar Dixon's sovereign immunity defense, it clearly does not. The exception holds that the state defendants are not entitled to sovereign immunity, where plaintiffs seek prospective injunctive relief if the state official violated statutory or constitutional law. Since the plaintiffs in this case are only seeking money damages and not injunctive relief, the exception does not apply, and Dixon is entitled to sovereign immunity. Let me just ask you, oh I'm sorry, you were going to say finally, go ahead. Oh no, you know your honor, go ahead. I wish you'd finish your thought, I'm sorry, I interrupted. I was just going to say, in finding to the contrary, the District Court relied on this Court's holding in Murphy v. Smith, which in turn interpreted an earlier Illinois Supreme Court case that invoked the officer suit exception for purposes of prospective injunctive relief, but did not address monetary damages for alleged past wrongs. What I wanted to ask you is this, has any Illinois court held that the chief judge or the superintendent of the Juvenile Temporary Detention Center cannot be considered a state employee? Has that ever occurred? Not that I'm aware of, I don't know. And there is this Mullins case, Mr. Henready, which indicates, it's a district court level that indicates Mr. Dixon is a state level employee? That's correct. Was it within Mr. Dixon's authority to allow outside groups or organizations to use the juvenile facility? Yes, your honor, that is something that they have done in other circumstances, and that is within his authority to control. I have the very same question because I too wanted to ask if, as superintendent of the center, Dixon, I take it, was responsible for approving any outside groups that sought to present programs or in any way have access to the center. Or was there another employment position at the detention center with that particular authority? Ultimately, it would be the office of the chief judge or Mr. Dixon who would make that decision. Mr. Henready, can I take you back to the question that Judge Brennan was asking and Judge Rovner's question was getting at about Mr. Dixon and his status as a state official? Uh-huh. I'm aware of the Mullins case. What is the legal standard under Illinois law for measuring or assessing whether someone is a state employee or state official for purposes of the sovereign immunity determination versus a county official? And the reason I'm asking that question is I'm trying to understand what is the limiting principle here? It's the right to control, your honor. There's a case called Darner v. Colby. The office of the chief judge has control over the JTDC operational control pursuant to the County Shelter and Detention Home Act. Right. And I know that he has appointed Mr. Dixon or he did appoint Mr. Dixon superintendent, right? And so the theory would have to be that the control then is transferred to Dixon and it's transferred to Dixon under the cloak of this state authority that it started with, right? That's correct, your honor. So would all correctional officers at the detention center therefore also be state employees for purposes of sovereign immunity? Or would Superintendent Dixon's chief deputy be a state official? I would say yes, your honor, although I don't believe there's been any cases on that direct point. Okay. And what you're measuring it when you when you talk about control, control is vested in the chief judge, correct? Correct. Okay. And then it is it's conferred upon the superintendent and Mullins Mullins concludes that's enough, at least for the superintendent. That's correct. Okay. And is Illinois law unsettled on where it flows from there? No, your honor, because I would take I would say, well, we've never it's never directly addressed. As far as I know, correctional officers at the detention center, it would certainly flow that way for the state police and people of that nature. And what do you and tell me more about the state police? How does it work with them? The state police are all considered state employees and entitled to sovereign immunity under the proper circumstances. That's the the Healy. I'm not excuse me, not Healy, but Currie v. Lau and a couple of the other cases at issue here address sovereign immunity for state police officers. Okay. And it matters. It matters. Not one wit that Mr. Dixon is a county employee. Well, I'd argue he's he's not a county employee. The county there is there is the county does do some pay part of the salary and the budget has has certain control. But in a lot of cases, I can't get it all right now, but a lot of cases the state will reimburse. It does. Part of it. What part of the salary don't they pay? I believe his salary is reimbursed by the state. Is that in the record? I don't have it at my fingertips, Your Honor, but I believe that it is somewhere in the record or it might be. It might just be statutory. Yeah. Now, it's true, is it not, that the parties stipulated that Dixon, as the superintendent of the facility, was the chief judge's final decision maker with respect to the Empire filming. Right. That's correct. So, one would say, I think you would argue that Dixon was exercising the authority provided to the chief judge in his capacity as the state. And therefore, acting as a state employee. That's correct, Your Honor. And regardless of anyone else working there, that is corrected in this case that has been stipulated. If I may turn briefly to sovereign immunity in this case, even the plaintiffs have sort of pivoted here. They did not argue below that Mr. Dixon did not meet the elements of sovereign immunity under Illinois law and instead relied entirely on the officer student exception. So, I believe their current argument that he doesn't meet all the elements has been waived. But regardless, he does meet all of the elements. They are, very briefly, that state employee did not act beyond the scope of his authority. Two, the alleged duty was not owed to the public generally, independent of state employment. And three, the complaint of actions involved matters ordinarily within the employee's normal and official functions. As to the first element, Dixon did not act beyond the scope of his authority. As already discussed, it's not disputed that he had the authority to approve and facilitate filming within the walls of the detention center. And that even alleged wrongful acts are protected by sovereign immunity, as long as they don't exceed the scope of that authority. Second, Dixon did not owe a duty to the general public, independent of his employment. Dixon would have no duty whatsoever with respect to either the detention center or plaintiffs, but for his state employment. And then third, Dixon's administrative decisions regarding the use of space and resources for the detention center, as well as housing scheduling and activities, were within the normal and official function as superintendent. And then finally, for purposes of sovereign immunity in Illinois, in addition to the Healy factors, the courts must consider whether a judgment for the plaintiffs would operate to control the actions of the state or subject it to liability. Here, the judgment in favor of the plaintiff would go directly to how Dixon, in his role as superintendent, uses the resources of the detention center and his oversight of scheduling activities and housing. Plaintiffs have sort of raised this idea that sovereign immunity may not apply because they've named Dixon in his individual capacity instead of his official capacity. But under Illinois law, actions are characterized as official capacity or against the state based on the issue involved and the relief sought and cannot be circumvented simply by naming the defendant in his individual capacity. Plaintiffs themselves appear to concede this at pages 27 and 28 of their brief, where they note that the question at hand is whether a fiduciary duty is owed by the state of Illinois to the minors entrusted to its care. And then, very briefly, even if sovereign immunity did not apply, plaintiff's breach of fiduciary duty claim does fail as a matter of law. In order to maintain a state fiduciary duty claim, plaintiffs must establish that Dixon owed them a fiduciary duty, which in Illinois law means a special circumstance or special circumstances of the party's relationship. This generally applies to financial and business relationships. It's never been found to apply between a correctional officer and a detainee ever, not in Illinois or anywhere else in the country. And plaintiffs are effectively asking this court to endorse a brand new theory of liability based on their reading of the Parks case, which was overturned by the Illinois Supreme Court. In Parks, the allegations against the defendant were that the plaintiff removed a minor from her family for the purposes of sexually, physically, and psychologically abusing her. The Illinois courts found that this violated every moral, ethical, and legal duty it could name, and did refer to the defendant at one point as her guardian. But plaintiff's argument that a constructive guardianship thus became the law of Illinois is unsupported, as the case was reversed on other grounds by the Illinois Supreme Court. The court did not discuss, let alone endorse, the findings of constructive guardianship, and neither has any Illinois court since. Why does the Illinois Supreme Court's decision on the statute of limitations ground mean that the intermediate appellate court's analysis of the guardian-ward relationship was flawed or does not reflect Illinois law? It doesn't necessarily, Your Honor, or even usually, but I don't think Parks created a new fiduciary duty in any circumstances, because generally guardianship is statutory and not constructive, and none of the elements of the statutes were met in that case or this case. But even if Parks' decision was right on those facts, they would not necessarily be extended to a correctional administrator, because there's no guardian-ward relationship in this case anyway, and no fiduciary duty. So I will, I've got a little time left I'd like to reserve for rebuttal. Good morning. Oh, you're muted. I knew I would do that. I always do that. I apologize, Your Honor. May it please the court and good morning to you as well. Plaintiffs are children held pretrial at JTDC who brought this suit to vindicate their rights after Warden Dixon placed them in punitive lockdown conditions, all so that he could film a television show and meet celebrities. In denying summary judgment on plaintiff's state law claims, the lower court relied on a general principle of Illinois jurisprudence, which courts have applied in damages suits since 1937. This general principle is that state sovereign immunity affords no protection when it is alleged that a state official has acted in violation of constitutional law or in excess of his authority. This is nothing more than the definition of an ultra vires action. In so holding the lower court relied on the Illinois Supreme Court case Fritz versus Johnston Healy versus vocal, and indeed this court's own holding and Murphy versus Smith. Forgive me, but if we determine that under the Healy test the claim here is actually against the state. Would you then concede that under Parma sovereign immunity would apply, given that damages are sought, rather than prospective injunctive relief. That is that is correct your honor but the Healy test has to be employed, and then once the Healy test if this court were to find that defendant Dixon meets his burden, because it is a conjunctive test all three aspects of the test need to be met. Then it is in fact a state case of where the state is the true party at interest, and then the Illinois Court of Claims would have to hear this case, but Dixon has not met all three prongs of the test for example. Just a minute under the Healy test isn't the duty that Dixon has to these plaintiffs related solely to his employment position in that Dixon has no relationship whatsoever with respect to the plaintiffs, other than through his position. Respectfully know your honor that is not quite right so under prong to courts look to whether there is a general duty that exists within Illinois common law, the duty that is alleged to have been breached does attach to the general public, not solely in state employment context, the duty here is the duty that any adult would owe to any child in his care. If Dixon was not in a juvenile detention setting as warden and he was instead in another situation where he had control over these kids, then he will be breaching a general duty, if by contrast this was a duty that only juvenile detention wardens had to juvenile detainees, then that duty would be one that would be satisfied under prong to. Help me with this then. How would a fiduciary duty to prevent harm to those detained even work in a custodial setting. Isn't the confinement itself harmful doesn't a superintendent have to protect a public interest. In addition to considering the well being of any individual who's detained. Yes, your honor. So, so this is a pre pre trial detention so it is meant to be rehabilitative, the children are not allowed to be harmed in some sort of penological way at all. And so the test would be whether or not he is pursuing his own personal interests in placing children in punitive lockdown conditions, as opposed to a legitimate government purpose. And that is precisely what the lower court held judge Paul Meyer health that there exists a genuine dispute of material fact as to whether Dixon was pursuing his own personal interest in placing them in lockdown conditions, just to bring his wife to the facility to meet celebrities and take photographs with them. If he was doing it for some sort of legitimate purpose such as a coven lockdown or safety concern that would be within legitimate government purpose within the public interest as your honor sites. I am having some problem with your argument because the way I believe I see it. But I can always be convinced God knows. When you apply that second factor, the duty. The duty alleged was not one owed to the public, generally, independent of the fact that state employment, you, you argue that he has a fiduciary duty to the plaintiffs but any such duty, it seems to me, would have to stem from the relationship pre aided by them. Between them, I should say, I guess, by, by virtue of his position as superintendent. He doesn't have a relationship with the plaintiffs. Other than as superintendent so no duty is owed to them in his role. I'm sorry, your honor, or, or, or it seems to me by virtue of circumstances that are outside of his position. So it seems to me that the second factor is making. Well, your honor. So, I just want to note as a as a preliminary point that Dixon has to meet all three prongs. He obviously cannot meet three. Why can't he meet the third factor. Is the complaint of actions don't involve matters that are ordinarily within his normal official functions. Yes, your honor. Indeed, as the court, as a rather my brother on the other side. Mentions on page 12 of his reply brief. This is not within his typical job functions to place children in lockdown conditions, not for a legitimate government purpose, but instead to simply meet celebrities. If it's true what plaintiffs are alleging and indeed have shown at the summary judgment stage. He has placed them in punitive penological purposes, not for a legitimate government purpose, which is certainly outside one's normal and official functions. It is not within his normal official functions to place them in lockdown conditions so that he could receive assigned directors chair, invite his wife to the facility to meet a bunch of celebrities and take photographs. We've heard that now three times. Are there. Is there some allegation that in entering into the contracts here that he exercised authority that wasn't granted to him. Yes, your honor. So just because he has as part of his job functions, the ability to make contracts on behalf of the state does not mean that he can make contracts on behalf of himself for his own personal interests. And that is precisely what has been alleged here and shown at the summary judgment stage. So there's a distinction between his power and his authority. His authority has legal limits that of the Constitution and Illinois common law. And plaintiffs have alleged and shown on summary judgment that he exceeded his authority by exceeding those lawful limits, which prohibits state officials from abusing their power for personal gain. Miss Popkin, can I get the benefit of your perspective on a different a different question? Yes, your honor. And it's this I'm the way I understand the district court, the district court's ruling on the immunity issue is that is that it was a it's a trial issue. And it's an issue that's going to be presented to the jury as to perhaps in addition to the state fiduciary duty breach. Or the alleged brief breach, the jury is going to consider the merits of the 14th Amendment claim under the U.S. Constitution as to DeShaney. Because that's pertinent to whether Mr. Dixon violated the U.S. Constitution. And that in turn is relevant to the state sovereign immunity kind of threshold gating question. Is that a is that a fair description? You think of what happened in the district court, whether right or wrong? Yes, I believe that is the correct interpretation of its holding. OK, so what what I find is odd about that is. That state sovereign immunity. Or the availability or lack thereof. Is going to turn on the jury's resolution of a dismissed federal claim. In other words, there's no circumstance in light of the qualified immunity holding. Under which the plaintiffs can receive damages for a violation of the U.S. Constitution. That world no longer exists because of the dismissal of that claim. Why, therefore, would you send to trial that claim for purposes of a state law immunity analysis? Why wouldn't the state law immunity analysis, in other words, only turn on those claims that remain in the litigation? So here it would be the state law claim. Yes, your honor. It is. The reason why is because this is a jurisdictional question. It doesn't ask the underlying merits of one's claim. It only asks the simple question of who is this plaintiff trying to sue? So that's why if you look to the Healy test, it all involves. I don't think that's no, no, no. I don't think that's right. I think that what. By the terms of the district court's opinion. The substance of the 14th Amendment Dishaney claim would be put to the jury. And the jury would return a verdict on whether there was or was not a violation of the Dishaney standard, correct? That is what the lower court held. I personally would not agree with Judge Paul Meyer's decision to have the substance of the constitutional claims be at issue. States have immunity, according to every single Illinois court that has ever employed. The Free Park Healy test has only looked to allegations because it is a jurisdictional question. It is only asking who the plaintiff is trying to sue. In fact, even on summary judgment. Can you do you know of any case in state law that that has ever hinged the viability of the state immunity question on the resolution of the merits of a dismissed claim? No, Your Honor, but there this court need not do so. And neither does the lower court need to do so because there are intentional tortious claims that remain remain live in this case that are predicated on the very same underlying acts of the constitutional claims. So is that to say is that to say you don't agree with the district court's analysis either? In terms of the on the point that I'm asking you about on the Deshaney for US constitutional analysis. I know, Your Honor, I think that a court can simply look to the existence of illegal actions that are outside the scope of one's authority that have been alleged. That's prong one of the Healy test here. He does not meet it. Even with if there were no constitutional claims that have ever been in this case, the intentional tortious claims are outside the scope of Dixon's authority and necessarily preclude him from meeting prong one. Okay, so that I think that is within the scope of what the district court decided. Correct. In other words, that the trial that was ordered the trial would consider the merits of the state law fiduciary duty claim. Correct. That is correct, Your Honor. Okay. And if a verdict were returned in your client's favor, that would bear favorably upon your position that the defendant is not entitled to state immunity. That is correct, Your Honor. And that has nothing at all to do with the US Constitution. Yes, Your Honor. Okay. Hmm. But I guess if I may return to the just pivoting away from the three part Healy test, what Judge Palmer certified, the question that she certified was whether Parmar has any bearing on this court's holding in Murphy versus Smith. And it does not. In fact, defendants concede on reply at page 16 that individuals can be sued for damages on state tort claims. So I would ask the court to to reaffirm its holding in Murphy versus Smith because Parmar being an official capacity suit that merely holds that in official capacity cases, a litigant cannot sue for damages because it is tantamount to a lawsuit against the state that that has no bearing on Murphy, which correctly relied on this three part test in Healy. The Murphy decision doesn't disaggregate between personal capacity suits and official capacity suits, correct? That that failure to acknowledge that difference could be an issue with Murphy, correct? No, Your Honor. I don't think that Murphy needed to opine on the official capacity claims because this court correctly relied pursuant to the Erie doctrine on the holding in Healy versus vocal, which establishes the three part test, which must be employed in personal capacity damages suits. When a state officer brings the state sovereign immunity affirmative defense forward, it's the test that courts must employ even and still do employ even to this day. Whenever state sovereign immunity is raised as an affirmative defense, Murphy was quite right there and Parmar does not disturb its analysis whatsoever. Well, there are two lines of cases that Murphy is relying on, right? In certain instances, there's a citation to the second line of cases when perhaps it's resolving an issue on the first line. Is that fair? Yes, that's fair. To Your Honor's point, Murphy does rely on LIDERU, which is an official capacity case that employs the officer suit exception. It only relies on it for a general principle of law, that of the Ultra Vires Act, that an officer who is alleged to have violated the Constitution or committed some other action outside the scope of his authority, that he cannot avail himself of state sovereign immunity. That is a general principle of law that is applied in damages cases and injunctive relief or rather official capacity cases alike. And so it's two very distinct areas of law. And Murphy does point to this general principle that is relied on in both situations. But I think that Murphy was correct in that it applied the three-part test in Healy, which is the only test that governs this case, and the test which Dixon has failed to meet. In fact, he waived arguments as to prongs two and three below. His entire summary judgment brief is completely silent as to prongs two and three. And there is no way that he has met prong three, which is that he was acting within his normal and official functions, given the allegations that he was placing children in punitive lockdown conditions so that he could meet Chris Rock with his wife and receive assigned director's chair. I mean, there is just no argument to the contrary that he was within his normal and official functions when doing so. So missing prong three alone is enough to preclude him from availing himself of state sovereign immunity. And one other point as to the constitutional allegations, they were dismissed only on the basis of whether or not they were clearly established at the time. But that has no bearing on a state sovereign immunity analysis. In fact, the lower court explicitly held that there exists a genuine dispute as to whether he violated their 14th Amendment rights. So that would constitute a wrongful act that would preclude Dixon from satisfying prong one as well. Judge Brennan, Judge Scudder, do you have any other questions for Ms. Popkin? I do not. I do not. All right. Thank you, Ms. Popkin, very much. Thank you. Mr. Henready, you have less than two minutes, but we did give Ms. Popkin the extra time. So let's give you four minutes, please. Thank you, Judge. Very briefly in rebuttal, I believe it was Judge Scudder hit on the notion about the DeShaney claims being put to the jury. And I think that's important because if the DeShaney claims, the way that the district court styled that was that the DeShaney claims would have to go to the jury to determine whether or not there had been a violation of constitutional law. And if there were, then sovereign immunity wouldn't apply. And that's why this circles back to the officer suit exception, because under the officer suit exception, which Illinois says is also the prospective injunctive relief exception, those allegations don't matter for purposes of sovereign immunity. They can, if they are made in a case where they are seeking prospective injunctive relief, that bars sovereign immunity. Otherwise, sovereign immunity is available. And also Ms. Popkin mentioned that there were still allegations of torts claims that would prevent Mr. Dixon from meeting the first elements of the Healy test. But the Illinois case law is very clear that the claim for torts does not take someone outside of sovereign immunity, because if it did, people would just allege a tort every single time. It assumes a wrongdoing may exist and that sovereign immunity would still apply. As opposed to what, an alleged statutory violation? As opposed to a statutory violation or some other violation. But yeah, I believe that's correct. But simply alleging that someone did something wrong, alleged wrongdoing, doesn't take it outside of the realm of sovereign immunity as long as they're within their duty and they're within the scope of their duty. With that, I would just ask that for the reasons addressed here today, and those set forth in our brief and reply, we'd ask this court to reverse the district court's partial denial of summary judgment. And specifically find that one, the Illinois officer suit exception is inapplicable to this case, and thus Superintendent Dixon is entitled to the sovereign immunity on the state breach of fiduciary duty claim. And two, that Superintendent Dixon does not owe plaintiffs a fiduciary duty under Illinois law. Thank you. Well, thanks to both parties for that spirited discussion. And the case will be taken under advisement. Thank you very much. Thank you. Okay.